ANDRE VERDUN
CROWLEY LAW GROUP
401 West "A" Street, Suite 925
San Diego, CA 92101
Tel: (619) 238-5700
Fax: (866) 786-6993
andreverdun@CrowleyLawGroup.com

RONALD WILCOX, Bar No. 176601
1900 The Alameda Ste., 530
San Jose, CA 95126
Tel: 408-296-0400
Fax: 408-296-0486
ronaldwilcox@gmail.com

IVAN LOPEZ VENTURA, Bar No. 255743
5155 West Rosecrans Avenue Ste., 224
Hawthorne, CA 90250
Tel:  714-788-4804
Fax:  949- 266-8230
lopezesq@gmail.com

Counsel for the Plaintiff
ELISA R. ROMERO

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (SAN DIEGO DIVISION)

| | |
|---|---|
| ELISA ROMERO,<br><br>     Plaintiff,<br><br>v.<br><br><br>FDS BANK, DEPARTMENT STORES NATIONAL BANK,<br><br>     Defendants. | Case # 3:15-cv-00193-CAB-MDD<br><br>**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Date: January 29, 2016<br>Dept.: 4C<br>Judge: Hon. Cathy Ann Bencivengo<br>Complaint filed: January 25, 2015<br>Trial Date: None Set |

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**PAGE**

I.    PROCEDURAL POSTURE................................................................. 1

II.   BACKGROUND ............................................................................. 1

III.  PLAINTIFF'S STATEMENT OF FACTS .................................... 3

IV.   LEGAL DISCUSSION.................................................................. 8

    A.    Intrusion on Seclusion ....................................................... 8

        1. Defendants Acted Offensively By Engaging In Conduct The Natural Consequence Of Which Is To Harass And Annoy By Making Repeated Telephone Calls, And Calling With Unreasonable Frequency Under The Circumstances .................................................................. 10

            a.  One has a right to be left alone at home, work, and on cell phones............................................. 11

            b.  Repeated and continuous calls are intrusion upon seclusion.......................................................... 12

            c.  The volume and pattern of calls themselves evidence intent to harass ................................. 14

            d.  Whether a debt collector is polite on the phone is irrelevant ................................................ 16

        2. Continuing To Call After A Consumer Says She Is Unable To Pay, *Or* Asks That The Calls Stop, *Or* Refuses To Speak To The Collector, Evidences An Intent To Harass ....................................................................... 17

        3. Repeated Calls On The Same Day Violate RFDCPA And Intrude Upon Seclusion ...................................... 18

4. Placing Telephone Calls Without Identifying Oneself Is Harassing And Intrusive .................................................................. 19

5. Making Collection Calls To A Cell Phone Via The Use Of An Auto-dialer, Or The Use Of Pre-recorded Messages, Is An Intrusive Practice ................................................. 20

B. The Ninth Circuit Recognizes Negligent Infliction Of Emotional Distress ........................................................................ 21

C. Defendants Have Not "Cured" Their Violation Of The RFDCPA .................................................................................... 22

V. CONCLUSION ................................................................................ 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**CASES**                                                                                          **PAGE(S)**

*Adams v. CIR Law Offices, LP*,
No. 07-CV-1041, 2007 U.S. Dist. LEXIS 63808
(S.D. Cal. Aug. 29, 2007) ........................................................................22

*Austin v. Tehrune*,
367 F.3d 1167 (9th Cir. 2004) ................................................................21

*Baker v. G.C. Servs. Corp.*,
677 F.2d 775 (9th Cir. 1982) ..................................................................25

*Bassett v. I.C. Sys., Inc.*,
715 F. Supp. 2d 803 (N.D. Ill. 2010) ................................................15, 17

*Bauer v. Ford Motor Company*,
149 F. Supp. 2d 1106 (D. Minn. 2001)........................2, 10, 12, 16

*Bowden v. Spiegel*,
96 Cal. App. 2d 793 (1st Dist. 1950) ......................................................21

*Brandt v. I.C. System, Inc.*,
No. 8:09-cv-126-T-26MAP, 2010 U.S. Dist. LEXIS 14588
(M.D. Fla. Feb. 19, 2010) ................................................................14, 17

*Bundren v. Superior Court*,
145 Cal. App. 3d 784 (2d Dist. 1983)......................................................20

*Carey v, Brown*,
447 U.S. 471 (1989)..................................................................................11

*Carr v. NCO Financial Sys.*,
No. 11-2050, 2011 U.S. Dist. LEXIS 145993 (E.D. Pa. Dec. 20, 2011)......15

*Castaic Lake Water Agency v. Whittaker Corp.*,
272 F. Supp. 2d 1053 (C.D. Cal. 2003) ....................................................4

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

*Chavious v. CBE Group,*
No. 10-CV-1293, 2012 U.S. Dist. LEXIS 4362
(E.D.N.Y. Jan. 13, 2012) ........................................................................ 13

*Clark v. Capital Credit & Collection Servs., Inc.,*
460 F.3d 1162 (9th Cir. 2006) .............................................................. 16

*Corson v. Accounts Receivable Mgmt.,*
No. 13-01903, 2013 U.S. Dist. LEXIS 112282 (D. N.J. Aug. 9, 2013) ......... 2

*Desmond v. Phillips & Cohen Associates, Ltd.,*
724 F. Supp. 2d 562 (W.D. Pa. 2010) .............................................. 10, 16

*DeTeresa v. Am. Broad. Cos., Inc.,*
121 F.3d 460 (9th Cir. 1997) .................................................................. 8

*Diaz v. DL Recovery Corp.,*
486 F. Supp. 2d 474 (E.D. Pa. 2007) .................................................... 15

*Duncan v. JP Morgan Chase Bank, N.A.,*
No. 5:10-cv-01049, 2011 U.S. Dist. LEXIS 127884
(S.D. W. Va. Nov. 4, 2011) ....................................................... 9, 12, 13

*Fairfield v. American Photocopy Equipment Co.,*
138 Cal. App. 2d 82 (1955) .................................................................. 20

*Fausto v. Credigy Servs. Corp.,*
598 F. Supp. 2d 1049 (N.D. Cal. 2009) ........................................*passim*

*Fillichio v. M.R.S. Associates, Inc.,*
No. 09-61629, 2010 U.S. Dist. LEXIS 112780 (S.D. Fla. Oct. 9, 2010) ...... 12

*Flores v. Collection Consultants of Cal.,*
No. SA-CV-14-0771-DOC,
2015 U.S. Dist. LEXIS 92732 (C.D. Cal. Mar. 20, 2015) ........................ 24

*Foti v. NCO Financial Systems,*
424 F. Supp. 2d 643 (S.D.N.Y. 2006) ................................................. 15

v

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

*Fox v. Citicorp,*
15 F.3d 1507 (9th Cir. 1994) ................................................ 2, 21, 22

*Gager v. Dell Financial Services, LLC,*
727 F.3d 265 (3d Cir. 2013) ................................................... 11, 20

*Harris v. Itzhaki,*
183 F.3d 1043 (9th Cir. 1999) ...................................................... 3

*Hendricks v. CBE Group, Inc.,*
891 F. Supp. 2d 892 (N.D. Ill. 2012) ...................................... 13, 14

*Hosseinzadeh v. M.R.S. Assocs.,*
387 F. Supp. 2d 1104 (W.D. Cal. 2005) ...................................... 15

*In re Kemper,*
263 B.R. 773 (S.D. Tex. 2001) ................................................... 23

*Inzerillo v. Green Tree, LLC,*
No. 13-CV06010, 2014 U.S. Dist. LEXIS 164267
(N.D. Cal. Nov. 24, 2014) ...................................................... 8, 10

*Joseph v. J.J. Mac Intyre Cos.,*
238 F. Supp. 2d 1158 (N.D. Cal. 2002) ............................... 9, 10, 17

*Joseph v. J.J. Mac Intyre Cos., LLC,*
281 F. Supp. 2d 1156 (N.D. Cal. 2003) ........................... 3, 8, 9, 11

*Kerwin v. Remittance Assistance Corp.,*
559 F. Supp. 1117 (D. Nev. 2008) .............................................. 17

*Komarova v National Credit Acceptance, Inc.,*
175 Cal. App. 4th 324 (1st Dist. 2009) ........................... 12, 17, 18

*Kuhn v. Account Control Technology,*
865 F. Supp. 1443 (D. Nev. 1994) ................................... 9, 11, 18

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

*Langdon v. Credit Mgmt. LP*,
No. C-09-3286, 2010 U.S. Dist. LEXIS 16138
(N.D. Cal. Feb. 24, 2010)............................................................................18, 19

*Masuda v. Citibank*,
38 F. Supp. 3d 1130 (N.D. Cal. 2014) ....................................................10, 17

*McCollough v. Johnson, Rodenberg & Lauinger, LLC*,
637 F.3d 939 (9th Cir. 2011) .............................................................................1

*McEndree v. Rash Curtis & Assocs.*,
No. 2:10-cv-01079, 2012 U.S. Dist. LEXIS 65374
(E.D. Cal. May 9, 2012)..........................................................................20, 21

*Miller v. Fairchild*,
885 F.2d 498 (9th Cir. 1989) ..........................................................................2, 21

*Miller v. National Broad. Co.*,
232 Cal. Rptr. 668 (Cal. Ct. App. 1986) ..........................................................13

*Mims v. Arrow Financial Services, LLC*,
132 S. Ct. 740 (2012)................................................................................11, 20

*Moore v. Greene*,
431 F.2d 584 (9th Cir. 1970) .............................................................................8

*Olmstead v. United States*,
277 U.S. 478 (1928).........................................................................................11

*Owens v. Providian Financial Corp.*,
227 F.R.D. 181 (E.D.N.Y. 2005) ....................................................................21

*Panahiasal v. Gurney*,
No. 04-04479, 2007 U.S. Dist. LEXIS 17269
(N.D. Cal. Mar. 8, 2007)...........................................................8, 10, 13, 20

*Pratt v. CMRE Financial Services, Inc.*,
No. 4:10-cv-2332, 2012 U.S. Dist. LEXIS 3460
(E.D. Mo. Jan. 11, 2012)..................................................................................13

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

*Prewitt v. Wolpoff & Abramson, LLP,*
No. 05-cv-725S(F), 2007 U.S. Dist. LEXIS 19148
(W.D.N.Y. Mar. 19, 2007).................................................................. 17

*Quinlan v. CitiMortgage, Inc.,*
No. 2:11-cv-00986, 2012 U.S. Dist. LEXIS 87010
(E.D. Cal. June 22, 2012)...................................................................... 8

*Ramsour v. JP Morgan Chase Bank,*
Case No. 11-cv-0116, 2012 U.S. Dist. LEXIS 170723
(S.D. Cal. Nov. 30, 2012) .................................................................... 11

*Sanchez v. Client Services, Inc.,*
520 F. Supp. 2d 1149 (N.D. Cal. 2007) ............................................ 9, 14

*Sanders v. American Broad. Cos.,*
52 Cal. App. 4th 453 (2d Dist. 1997)..................................................... 8

*Satterfield v. Simon & Schuster, Inc.,*
569 F.3d 946 (9th Cir. 2009) .......................................................... 11, 12

*Shand-Pistilli v. Prof'l Account Servs.,*
No. 10-CV-1808, 2010 U.S. Dist. LEXIS 75056
(E.D. Pa. July 26, 2010)....................................................................... 17

*Shin v. Kong,*
80 Cal. App. 4th 498 (2000) ................................................................ 22

*Sparks v. Phillips & Cohen Assoc., Ltd.,*
641 F. Supp. 2d 1234 (S.D. Ala. 2008) ................................................ 14

*Swearingen v. Portfolio Recovery Assocs.,*
892 F. Supp. 2d 987 (N.D. Ill. 2012) ................................................... 13

*Thomka v. AZ Chevrolet, Inc.,*
619 F.2d 246 (3d Cir. 1980).................................................................. 25

viii

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

*Thompson v. Chase Bank, N.A.*,
No. 09-CV2143, 2010 U.S. Dist. LEXIS 32620
(S.D. Cal. Mar. 30, 2010)...............................................................................2, 21

*Tourgeman v. Collins Fin. Servs.*,
No. 08-CV1392, 2011 U.S. Dist. LEXIS 81070
(S.D. Cal. July 26, 2011)................................................................................2, 21

*Valentine v. Brock & Scott, PLLC*,
No. 2:09-CV-2555, 2010 U.S. Dist. LEXIS 40532
(D. S.C. Apr. 26, 2010) .....................................................................................19

*Van Westreinen v. Americontinental Collection Corp.*,
94 F. Supp. 2d 1087 (D. Or. 2000) .....................................................................2

*Vescovo v. New Way Enterprises*,
60 Cal. App. 3d 582 (2d Dist. 1976).................................................................11

*Weakley v. Redline Recovery Services, LLC*,
723 F. Supp. 2d 1341 (S.D. Cal. 2010).........................................................2, 21

*Williams-Platt v. Bureau of Collection Recovery, Inc.*,
No. 09-3609, 2011 U.S. Dist. LEXIS 72598
(D. Minn. June 15, 2011) ..................................................................................12

**RULES/STATUTES**

15 U.S.C. § 1692................................................................................*passim*

47 U.S.C. § 227............................................................................................22

Cal. Penal Code § 653m..........................................................................12, 22

Cal. Civ. Code § 1788.11.................................................................................18

Cal. Civ. Code § 1788.17............................................................................10, 18

Cal. Civ. Code § 1788.30.......................................................................22, 23, 24

ix

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

## TREATISES

**Enforcing Judgments and Debts**,
Alan M. Ahart, The Rutter Group (2009) ....................................................... 15

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

# I.    PROCEDURAL POSTURE

Defendants' motion seeks summary judgment on only some of Plaintiff's claims (the Rosenthal Fair Debt Collection Practices Act ("RFDCPA") and common law claims), and not her Telephone Consumer Protection Act ("TCPA") claim. Thus, barring settlement of this action, and regardless of the outcome of Defendants' motion, this case will proceed to trial.

# II.    BACKGROUND

In about six months, Defendants placed at least 295 telephone calls to Plaintiff in an attempt to collect a debt, despite Plaintiff's requests they cease.[1] This includes calling Ms. Romero 130 times in a six-week period (from July 17 to September 25, 2014),[2] hanging up without meaningfully identifying itself on 44 occasions, and making repeated calls to her per day on numerous occasions.

Of the nearly-300 calls placed, only two were manually dialed.[3] Thus, the remaining hundreds of calls were placed to Plaintiff's cell phone using an automated telephone dialing system, and via use of pre-recorded messages, in violation of the Telephone Consumer Protection Act. In fact, Defendants' unlawful and intrusive acts are consistent with their history and plan of unlawful collection practices. Two other consumers testified herein that they told Macy's to stop calling, but the calls continued.[4] As all of these calls were made to Ms. Romero without her consent, and

---

[1] **Exhibit 1**, Romero Declaration in Opposition to Motion for Summary Judgment.
[2] **Exhibit 2**, Deposition Notice to DSNB, and **Exhibit 3**, DSNB (Thomas Curtis) depo., at 88:12-20.
[3] **Exhibit 4**, Deposition Notice to FDS Bank, and **Exhibit 5**, FDS Bank (Paul Ray) depo., at 120:13-16.
[4] **Exhibit 6**, Elizabeth Carrington depo., at 9:21-10:03, and **Exhibit 7**, Effren Trejo depo., at 6:22-8:11. The Ninth Circuit has held such testimony from Fed. R. Evid. 404(b) witnesses is admissible. *McCollough v. Johnson, Rodenburg, Lauinger*, 637 F.3d 939, 953 (9th Cir. 2011) ("testimony of JRL's conduct in similar cases was relevant to show intent, absence of mistake, malice, willfulness, and

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

in spite of her requests that the calls cease, Defendants intruded upon her seclusion, violated the the RFDCPA, the TCPA, and negligently inflicted emotional distress.

Defendants' Motion for Summary Judgment should be denied. First, according to the Restatement (Second) of Torts, "There is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding . . . that his privacy is invaded."[5] And, whether Defendants' repeated calls amounted to an intrusion upon Plaintiff's seclusion is a question of fact for the jury.

Second, the tort of Negligent Infliction of Emotional Distress does indeed exist, and the Ninth Circuit has reversed trial courts that have dismissed claims of negligent infliction of emotional distress.[6] The Ninth Circuit has also reversed trial courts for dismissing negligence claims in unlawful collection matters.[7] Furthermore, the Southern District of California has recognized negligence claims for unlawful debt collection practices on numerous occasions.[8]

Third, Defendants' motion on Plaintiff's RFDCPA claim must be denied because their violations cannot be cured, and even if they could, Defendants' have not properly cured them.

reprehensibility.") As have courts within the Ninth Circuit handling FDCPA dispositive motions. *Van Westreinen v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087 (D. Or. 2000).

[5] As cited in *Bauer v. Ford Motor Company*, 149 F. Supp. 2d 1106, 1109 (D. Minn. 2001), and *Corson v. Accounts Receivable Mgmt.,* No. 13-01903, 2013 U.S. Dist. LEXIS 112282 (D. N.J. Aug. 9, 2013)

[6] *Miller v. Fairchild*, 885 F.2d 498, 511 (9th Cir. 1989).

[7] *Fox v. Citicorp,* 15 F.3d 1507, 1517 (9th Cir. 1994);

[8] *Weakley v. Redline Recovery Services, LLC,* 723 F. Supp. 2d 1341 (S.D. Cal. 2010); *Thompson v. Chase Bank, N.A.*, No. 09-CV2143, 2010 U.S. Dist. LEXIS 32620 (S.D. Cal. Mar. 30, 2010); *Tourgeman v. Collins Fin. Servs.,* No. 08-CV1392, 2011 U.S. Dist. LEXIS 81070 (S.D. Cal. July 26, 2011).

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Fourth, Defendants' motion raises significant issues of witness credibility and the motives and intent of Defendants. However, "[i]ssues of *credibility*, including issues of intent, should be left to the jury."[9] Thus, it is no surprise that numerous courts considering violations of federal and state collection laws, including courts within the Ninth Circuit, have denied summary judgment as to intrusion upon seclusion.[10]

Defendants' credibility will be front and center at trial. Throughout this litigation, Defendants took the position that no audio recordings of the conversations existed. Indeed, on September 11, 2015, Defendant served written discovery responses that stated, "DSNB has no audio recordings related to Plaintiff."[11] However, after all of Defendants' depositions were taken, and just weeks before the November 30 discovery deadline, Defendants suddenly produced an audio recording where the Plaintiff makes it clear she does not want to be called anymore, and indeed asks the debt collector to check the computer since it should have a record of Plaintiff's earlier requests to stop calling. Further, Defendants will need to explain to a jury why its discovery responses of September 11, 2015 denied the existence of any recordings, and their notes do not even come close to accurately representing what occurred in the recorded conversation.

## III. PLAINTIFF'S STATEMENT OF FACTS

Defendants placed at least two hundred ninety-five (295) telephone calls

---

[9] *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999).

[10] *Joseph v. J.J. Mac Intyre, LLC*, 281 F. Supp. 2d 1156, 1165 (N.D. Cal. 2003); *Fausto v. Credigy*, 598 F. Supp. 2d 1049, 1057 (N.D. Cal. 2009).

[11] **Exhibit 11**, at 7:16-19. Similarly, see **Exhibit 12**, at 7:15-20, where Defendant FDS stated, "No such documents exist."

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

to Plaintiff's cell phone, in about 6 months, in an attempt to collect a debt.[12] In total, Defendants placed at least two-hundred eighty-three (293) auto-dialer calls to Ms. Romero's cell phone from July 17, 2014 to December 2, 2014.[13] Of the nearly 300 calls placed, only two were manually dialed.[14]

Ms. Romero asked Defendants to stop calling on July 12, September 17, and December 3, 2013, and in the first two conversations told Defendants she didn't have the money to pay.[15] Plaintiff made contemporaneous handwritten notes of each of these conversations.[16] Plaintiff's husband overheard her telling them to stop calling on one occasion.[17] Defendant's own collection logs show they spoke to Ms. Romero on July 2, 2014, September 17, 2014 and December 3, 2103.[18] Defendants stipulated that collector Bryan Roth spoke to Plaintiff on July 2, 2014, Penny Wise, spoke to Plaintiff on September 17, and Karen Staub spoke to Plaintiff on December 3, 2 013.[19] Defendants' Aspect predictive dialer placed at least 201 calls to Ms. Romero's cell phone from July 17, 2014 to October 30, 2014.[20] This was *after* she she asked it to stop calling.[21] At one point, Defendants placed 130 calls to Ms.

---

[12] **Exhibit 3**, DSNB depo., at 135:11-15.
[13] **Exhibit 5**, FDS depo., at 113:21-115:07.[13]
[14] **Exhibit 5**, FDS depo., at 120:13-16.
[15] **Exhibit 1**, E. Romero Dec., par 6.[15]
[16] **Exhibit 16**, handwritten notes; **Exhibit 1**, E. Romero Dec., par. 7.
[17] **Exhibit 14**, Al Romero Depo, 15:12-19:21.
[18] *See* **Exhibit 8,** collection logs, DSNB 042, 051, and 058. A document is authenticated when produced by a party in discovery. *Castaic Lake Water Agency v. Whittaker Corp.,* 272 F. Supp. 2d 1053 (C.D. Cal. 2003). Also, FDS authenticated the collection logs. **Exhibit 5**, FDS 63:19-65:18. And DSNB testified it accesses those same collection logs. **Exhibit 3**, DSNB depo., at 61:19-63:17.
[19] **Exhibit 19**, Stipulation regarding dates of conversations, at page 2.
[20] **Exhibit 3**, DSNB depo., at 88:12-20.
[21] **Exhibit 1**, E. Romero Dec.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Romero in 6 weeks (from July 17 to September 25, 2014).[22] Defendants' collectors do not remember the telephone conversations with Ms. Romero, and thus cannot rebut her testimony.[23]  Defendants and their collectors testified, had Ms. Romero verbally requested Defendants to cease calling, their policy was to continue calling.[24] According to Defendants, they only stopped calling after the December 2013 conversation with Romero because she allegedly told Defendants they had the wrong phone number.[25]

Defendants' collectors who spoke to Ms. Romero on July 2, 2013 and September 17, 2013 testified they do not even remember the calls with Plaintiff. Thus, Defendants cannot rebut Ms. Romero's testimony that she told Defendants to stop calling.  Bryan Roth testified he does not remember speaking to Ms. Romero.[26] Penny Wise testified she does not remember anything from her conversation with Ms. Romero.[27] However, the conversation on December 3, 2013 was recorded by Defendants.  DSNB testified that in the December 3, 2013 call, Ms. Romero stated something to the effect of, "Don't you see in the notes that I told you to stop calling."[28] A copy of the recording is being lodged with the court.[29]

Defendants placed 55 calls to Ms. Romero in September 2014, 62 calls to Ms. Romero in October 2014, and 80 calls in November 2014 alone.[30] On at least 44

---

[22] **Exhibit 3**, DSNB depo., at 88:12-20.
[23] **Exhibit 9**, Roth depo., at 10:6-7; **Exhibit 10**, Wise depo., at 22:10-12.
[24] **Exhibit 10**, Wise depo., at 21:6-10; **Exhibit 5**, FDS depo., at 97:13-18, 44:5-18, 49:12-22, 118-119:10.
[25] **Exhibit 5**, FDS depo., at 118:18-119:10.
[26] **Exhibit 9**, Roth dep., at 10:6-7.
[27] **Exhibit 10**, Penny Wise dep., at 22:10-12.
[28] **Exhibit 3**, DSNB depo., at 143:10-23.  Also see **Exhibit 1**, Romero decl., **Exhibit 13**, Romero depo., at 191:11-192:5.
[29] **Exhibit 15**, recording of December 3, 2013 conversation.
[30] Wilcox Dec., par. 16.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

occasions, Defendants hung up without meaningfully identifying itself.[31] On numerous occasions, Defendants made repeated calls to Ms. Romero on the same day.[32]  For example: eight calls on November 26; five calls on October 8 and 29; four calls on July 23, 26, 30, September 6, 9, 10, 24, October 2, 7, 13, 28, November 20, December 1, 2, 2014; three calls on July 22, 24, August 2, September 8, October 3, 11, November 1, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 19, 15, 17, 24, 25, 28, 2014; and numerous other days where there were 2 calls per day.[33]

Defendants placed calls to Ms. Romero's cell phone, leaving pre-recorded messages, in violation of the TCPA.[34]

Defendant FDS testified it physically places calls to the consumer using a predictive dialer.[35] The dialer places 100,000 to 750,000 calls per day.[36] At a high point, the dialer places 15 million calls per month.[37] The Aspect predictive dialer was used to place the calls to Ms. Romero.[38]

Plaintiff took notes at the time Defendants made calls to her.[39] Plaintiff wanted to keep a record of all the times Macy's was calling her.[40] Because Macy's was the only debt collector that kept calling Plaintiff, Plaintiff knew it was Macy's calling because the other debt collectors stopped calling, and she would recognize

---

[31] Wilcox Dec., par. 16.
[32] Wilcox Dec., par. 16.
[33] **Exhibit 8**, collection logs, DSNB 42-59; Wilcox Dec., par. 23.
[34] **Exhibit 5**, FDS Depo., at 112:16-113:01, 144:16-145:23, **Exhibit 3**, DSNB depo., at 135:22-136:06.
[35] **Exhibit 5**, FDS Depo., at 33:14-16.
[36] **Exhibit 5**, FDS Depo., at 34:16-20.
[37] **Exhibit 5**, FDS Depo., at 36:4-10.
[38] **Exhibit 5**, FDS Depo., at 35:9-12.
[39] **Exhibit 13**, E. Romero Depo., at 27:23-28:3.
[40] **Exhibit 13**, E. Romero Depo., at 29:15-24, 74:11-25.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Macy's 800, or other, number calling her.[41] And sometimes, Plaintiff would answer and it was Macy's.[42] When Plaintiff wasn't sure if it was Macy's calling, she would call the number to see who it was, but if she realized she reached Macy's, she would, naturally, hang up.[43] However, Plaintiff telephoned Defendants less than 10 times.

Plaintiff was not ignoring Defendants as much as cowering from them since she found the repeated calls so highly offensive that she was suffering from nervousness, tension headaches, back and neck pain, causing her to take Ibuprofen and Tylenol.[44] Indeed, Plaintiff testified she was afraid of Defendants' repeated calls.[45] And the tension Plaintiff felt when the phone rang would automatically make her feel nervous.[46] Plaintiff would feel neck and back pain each day Macy's called.[47] Defendants' calls would cause Plaintiff tension on her chest, and her hands would shake.[48] Plaintiff suffered from nervousness and tremors during the whole time Defendants were calling.[49]

Plaintiff told her sister-in-law about how the repeated calls affected her.[50] She may have spoken to her sister-in-law about Defendants' calls between 20-50 times.[51] Plaintiff told her husband how the repeated calls gave her headaches about every

---

[41] **Exhibit 13**, E. Romero Depo., at 28:15-19, 30:15-21, 71:7-72:2, 206:17- 207:9.
[42] **Exhibit 13**, E. Romero Depo., at 72:3-13.
[43] **Exhibit 13**, E. Romero Depo., at 72:24-73:25; 74:1-9; 206:17-207:9.
[44] **Exhibit 13**, E. Romero Depo., at 48:19-49:5; 75:7-11, 79:23-80:17; 56:23-57:6.
[45] **Exhibit 13**, E. Romero Depo., at 47:12-21.
[46] **Exhibit 13**, E. Romero Depo., at 69:23-70:4.
[47] **Exhibit 13**, E. Romero Depo., at 78:7-79:3.
[48] **Exhibit 13**, E. Romero Depo., at 56:23-57:11, 138:24-139:13.
[49] **Exhibit 13**, E. Romero Depo., at 137:22-139:8.
[50] **Exhibit 13**, E. Romero Depo., at 57:17-23; 60:13-15.
[51] **Exhibit 13**, E. Romero Depo., at 159:21-160:14.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

other day and was taking Advil,[52] would tell him twice a week the calls were causing her stress,[53] that she had told Defendants to stop calling because they were stressing her out,[54] she complained of neck, shoulder and back pain;[55] and Mr. Romero also testified the calls negatively affected their marriage.[56]

## IV. LEGAL DISCUSSION

### A. Intrusion on Seclusion

• "Improper conduct in knowingly and intentionally pursuing a person to force payment of a debt, whether or not he owes it, may, under certain circumstances, gives rise to a right to damages for an invasion of privacy."[57]

• California courts hold that "whether or not the particular circumstances of the case are indeed highly offensive is a matter to be determined by the trier of fact," and whether Defendants' collection conduct was "highly offensive" is a factual question properly for a jury.[58]

---

[52] **Exhibit 14**, Al Romero Depo., at 32:20-33:19,
[53] **Exhibit 14**, Al Romero Depo., at 34:24-35:03; 35:10-14.
[54] **Exhibit 14**, Al Romero Depo., at 66:3-6.
[55] **Exhibit 14**, Al Romero Depo., at 67:11:86:11.
[56] **Exhibit 14**, Al Romero Depo., at 59:19-61:01, and 71:14-25.
[57] *Inzerillo v. Green Tree, LLC*, No. 13-CV06010, 2014 U.S. Dist. LEXIS 164267, at *12 (N.D. Cal. Nov. 24, 2014); *Panahiasal v. Gurney*, No. 04-04479, 2007 U.S. Dist. LEXIS 17269 (N.D. Cal. Mar. 8, 2007).
[58] *Quinlan v. CitiMortgage, Inc.*, No. 2:11-cv-00986, 2012 U.S. Dist. LEXIS 87010, at *14-15 (E.D. Cal. June 22, 2012) (*citing Deteresa v. Am. Broad. Cos., Inc.* 121 F.3d 460, 465 (9th Cir. 1997), which in turn cites *Sanders v. Am. Broad. Cos.*, 52 Cal. App. 4th 543 (2d Dist. 1997)); *Moore v. Greene,* 431 F.2d 584, 591 (9th Cir. 1970)(it was a decision for the jury whether a collection letter was highly offensive). *Joseph*, 281 F. Supp. 2d at 1165 (holding that there were triable issues of fact as to whether the plaintiff's privacy was invaded where the debt collector called the plaintiff over 200 times in the course of 19 months seeking to collect on a hospital debt) ("As stated above, genuine issues of material fact remain regarding Plaintiff's FDCPA and Rosenthal Act claims. Therefore, for the reasons stated in the Court's earlier ruling and above, Defendant is not entitled to summary judgment regarding Plaintiff's additional claims for invasion of privacy[.]"); *Inzerillo*, 2014 U.S. Dist. LEXIS 164267, at *14 (whether debt collector's repeated calls were

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

• Excessive calls to a consumer leads to stress and privacy invasion, whether or not the consumer answers the calls.[59]

The elements of an intrusion upon seclusion claim are:

> 1) the defendant intentionally intruded, physically or otherwise, upon the solitude or seclusion, private affairs or concerns of the plaintiff; 2) the intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable person; and 3) the intrusion caused plaintiff to sustain injury, damages, loss or harm.[60]

Defendants limits their motion to arguing they did not intrude on Plaintiff's privacy, and that any alleged intrusion was not offensive. Thus, Plaintiff responds to that limited argument. Simply put, Defendant's: 1) 295 calls in about six months, including 294 calls *after* Plaintiff she asked to stop calling on July 12, 2014, 2) repeated calls on the same day, 3) numerous hang up calls without meaningfully identifying itself, and 4) auto-dialer, and pre-recorded message, calls to a cell phone in violation of the TCPA, demonstrate their intrusion upon Plaintiff's seclusion.[61] At the very least, there are triable issues of fact rendering summary adjudication on this claim improper.

---

highly offensive is a question for the jury); *Duncan v. JP Morgan Chase Bank, N.A.*, 5:10-cv-01049, 2011 U.S. Dist. LEXIS 127884 (S.D. W. Va. Nov. 4, 2011) (fact issue whether 68 calls in 11 months after request to cease were highly offensive; giving phone number to creditor not blanket permission to call; denying MSJ).
[59] *Joseph v. J.J. Mac Intyre*, 238 F. Supp. 2d 1158, 1169 (N.D. Cal. 2002), and *Joseph*, 281 F. Supp. 2d at 1165; *Sanchez v. Client Services, Inc.*, 520 F. Supp. 2d 1149 (N.D. Cal. 2007).
[60] *Joseph*, 238 F. Supp. at 1169 (citation omitted).
[61] *See Kuhn v. Account Control Technology*, 865 F. Supp. 1443, 1448-49 (D. Nev. 1994) (denying debt collector's MSJ on intrusion for six (6) calls in one day; two days after the consumer already spoke to the collector).

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**1. Defendants Acted Offensively By Engaging In Conduct The Natural Consequence Of Which Is To Harass And Annoy By Making Repeated Telephone Calls, And Calling With Unreasonable Frequency Under the Circumstances**

• "There is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding" that his privacy is invaded.[62]

• Twenty two (22) phone calls in three (3) months is enough for an intrusion claim, even when there was only one (1) conversation.[63]

• A debt collector's repeated calls may lead to intrusion, even if the content is not offensive.[64]

California federal "courts have held that repeated and continuous calls in an attempt to collect a debt give rise to a claim for intrusion upon seclusion."[65] In enacting the federal Fair Debt Collection Practices Act, which is incorporated into the RFDCPA,[66] Congress stated:

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, **to marital instability**, to the loss of jobs, and to **invasions of individual privacy**.[67]

---

[62] *Bauer*, 149 F. Supp. 2d at 1109.
[63] *Desmond v. Phillips & Cohen Associates, Ltd.*, 724 F. Supp. 2d 562 (W.D. Pa. 2010).
[64] *Masuda v. Citibank*, 38 F. Supp. 3d 1130, 1135 (N.D. Cal. 2014).
[65] *Fausto,* 598 F. Supp. 2d at 1056; *Joseph*, 238 F. Supp. 2d at 1169-70; *Inzerillo*, 2014 U.S. Dist. LEXIS 164267, at *12; *Panahiasal*, 2007 U.S. Dist. LEXIS 17269.
[66] *See* Cal. Civil Code § 1788.17.
[67] 15 U.S.C. § 1692a. (Emphasis added).

Similarly, "Congress passed the TCPA to protect individual consumers from receiving **intrusive** and unwanted calls."[68] Indeed, one of the stated purposes of the TCPA was to prevent the invasion of privacy and nuisance resulting from automated calls to cell phones.[69]

### a. One has a right to be left alone at home, work, and on cell phones

Simply put, the RFDCPA preserves the "right to be let alone," famously classified by U.S. Supreme Court Justice Brandeis as "the most comprehensive of rights and the right most valued by civilized men,"[70] and has noted that "[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value."[71] As it is her right to be left alone, Plaintiff had a reasonable expectation of privacy to be free of unwanted calls to her cell phone while at home, work, and elsewhere,[72] which is precisely why courts say a phone call to a cell phone is **intrusive** and violates the TCPA. Thus, any infringement of that right may be found by the trier of fact to be highly offensive or outrageous. Indeed, one court denied summary judgment to a debt collector regarding an intrusion claim, stating:

> Technology and advances in science now allow individuals to make and
> receive calls on-the-go and in places in which the conventional land-line
> telephone would not permit. Defendant has cited no authority for the
> proposition that the Plaintiffs' receipt of its telephone calls while they were in

---

[68] *Gager v. Dell Financial Services, LLC*, 772 F.3d 265 (3d Cir. 2013).
[69] *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 745 (U.S. 2012); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. Cal. 2009).
[70] *Olmstead v United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting).
[71] *Carey v. Brown*, 447 U.S. 455, 471 (1980).
[72] *Joseph*, 281 F. Supp. 2d at 1161 n. 2; *Ramsour v. JP Morgan Chase Bank*, No. 11-cv-0116, 2012 U.S. Dist. LEXIS 170723, at *19 (S.D. Cal. Nov. 30, 2012); *Vescovo v. New Way Enterprises*, 60 Cal. App. 3d 582, 587 (2d Dist. 1976)(expectation of privacy at home); *Kuhn*, 865 F. Supp. at 1449 (and at work).

their car, and outside their homes, should chip away at this long established "right to be let alone" in their private affairs.[73]

**b. Repeated and continuous calls are an intrusion upon seclusion**

California's RFDCPA, the federal FDCPA, the TCPA and the Penal Code all recognize that repeated and continuous calls are highly offensive and prohibit such conduct, regardless of whether anyone answers the phone, ignores the call, or an actual conversation occurs.[74] Moreover, the California legislature has found repeated and continuous telephone calls so highly offensive and outrageous that it has criminalized the conduct, regardless of whether or not a conversation ensues. Cal. Penal Code § 653m *et seq.* Furthermore, the Ninth Circuit has stated a voice message and a text message are not distinguishable in terms of being an invasion of privacy.[75] Thus, according to the Ninth Circuit, a call need not be answered to intrude upon one's seclusion.

The tort of intrusion upon seclusion is based on the Restatement Second of Torts.[76] Courts have stated that "factors for the court to consider include the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and

---

[73] *Duncan*, 2011 U.S. Dist. LEXIS 127884, at *20.
[74] *See* 15 U.S.C. § 1692d and § 1692d(5). *Komarova v. National Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 345 (1st Dist. 2009) ("we do not interpret the [California FDCPA] to require that a plaintiff answer harassing collection calls before they can be actionable."); *Fillichio v. M.R.S. Associates, Inc.*, No. 09-61629, 2010 U.S. Dist. LEXIS 112780 (S.D. Fla. Oct. 9, 2010)(the TCPA does not require the calls to be answered for there to be a violation); *Williams-Platt v. Bureau of Collection Recovery, Inc.*, No. 09-3609, 2011 U.S. Dist. LEXIS 72598 (D. Minn. June 15, 2011)("The statute itself recognizes that answering the phone is not necessary for there to be harassment."); Cal. Penal Code 653m.
[75] *Satterfield*, 569 F.3d at 955.
[76] *Bauer*, 149 F. Supp. 2d at 1108-09.

---

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

the expectations of those whose privacy is invaded."[77]  Thus, there are various factors that should be considered; but nowhere does the Restatement or CACI jury instructions (CACI 1800) require the actual content of the phone call to be offensive, or even that the repeated and harassing calls be answered, as Defendants argue to Your Honor.  Indeed, that would require a victim to acquiesce to each of a criminal's repeated offenses and unwanted calls; that is clearly not the standard.  Simply put, there is no liability if a debt collector calls someone on the phone on one occasion or even two or three, to demand payment of a debt.[78]  But if that debt collector calls 295 times in about 6 months, at the very least it creates a jury question as to whether such persistence and frequency is intrusive.  Also, whether a debt collector's calls were made with "intent to annoy, abuse, or harass" may be inferred from circumstantial evidence.[79]  Thus, Courts within the Ninth Circuit have held that repeated and continuous calls in an attempt to collect a debt constitutes offensive conduct that gives rise to a claim for intrusion upon seclusion.[80]  As Your Honor can see, nowhere did the *Panahiasal* court say the repeated and continuous calls needed to be accompanied by some other harassing conduct, as Defendants allege.  Indeed, Defendants' "something more" argument has been rejected by courts that have denied summary judgment regarding repeated unlawful collection calls and intrusion upon seclusion.[81]

---

[77] *Id.* (*citing Miller v. National Broad. Co.,* 232 Cal. Rptr. 668 (Cal. Ct. App. 1986)).
[78] *Id.* (*citing* Restatement (Second) of Torts § 652B)
[79] *Swearingen v. Portfolio Recovery Assocs.*, 892 F. Supp. 2d 987 (N.D. Ill. 2012) (*citing Hendricks v. CBE Group, Inc.,* 891 F. Supp. 2d 892, 896 (N.D. Ill. 2012)); *see also Chavious v. CBE Group*, No. 10-CV-1293, 2012 U.S. Dist. LEXIS 4362, at *2 (E.D.N.Y. Jan. 13, 2012); *Pratt v. CMRE Financial Services, Inc.*, No. 4:10-cv-2332, 2012 U.S. Dist. LEXIS 3460, at *3 (E.D. Mo. Jan. 11, 2012).
[80] *Panahiasal,* 2007 U.S. Dist. LEXIS 17269.
[81] *Duncan*, 2011 U.S. Dist. LEXIS 127884, at *13 ("Placed in the proper context, the volume of calls made to a debtor can be demonstrative of an intent to annoy,

13

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

c. **The volume and pattern of calls themselves evidence intent to harass**

Courts have also held "the volume and pattern of the calls may themselves evidence an intent to harass."[82] Thus, they may also be considered highly offensive to a jury. As one court reasoned:

> As previously discussed, the number of telephone calls made by Defendant to Plaintiff in the present action totaled 101. As such, there is, at the least, a genuine issue as to whether Defendant's communications are of the type to qualify as being a clear demonstration of the intent of Defendant to "abuse or harass" Plaintiff, as opposed to a "minor irritation and intrusion," thereby evidencing the tort of invasion of privacy by intrusion[.] [83]

Also, 54 calls in six months to the consumer and third-parties was considered abusive and harassing as a matter of law.[84] I recall Judge Trumbull saying, during oral argument in *Sanchez*, something to the effect of, "I can understand 5 calls, maybe even 10, but after 10 calls, if she is not calling back, what purpose is there, other than to harass?" If 54 calls in six months, and 17 in one month, violates the FDCPA (§1692d(5)) as a matter of law (as in *Sanchez*), then how much more so does 295 calls in six months as we have here? If 54 calls in 6 months, including 17 calls in 1 month are abusive and harassing as a matter of law,[85] then how much more so are 295 calls in 6 months, and 130 calls in 6 weeks?[86] That's an average of more than 20 calls *per week*. Furthermore, unlike Plaintiff herein, the plaintiff in *Sanchez*

---

abuse or oppress, where, as in this case, those calls were repeated after Plaintiffs advised Defendant that they wished only to be contacted in writing, desired to have the autodialer to stop placing calls to their phones").

[82] *Hendricks*, 891 F. Supp. 2d at 896.

[83] *Brandt v. I.C. System, Inc.*, No. 8:09-cv-T-26MAP, 2010 U.S. Dist. LEXIS 14588 (M.D. FLA. Feb. 19, 2010) (*citing Sparks v. Phillips & Cohen Assoc., Ltd.*, 641 F. Supp. 2d 1234, 1253 (S.D. Ala. 2008)).

[84] *Sanchez,* 520 F. Supp. 2d at 1161.

[85] *Id.* at 1161.

[86] **Exhibit 3**, DSNB depo., at 88:12-20.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

did not say she had no money to pay, or verbally request the calls stop, and indeed never once spoke to the debt collector.

There is no precise number of calls for an intrusion claim. A debt collector's 9 calls in 30 days could possibly constitute excessive frequency under the circumstances,[87] as can 31 calls over a 12-day period.[88] Furthermore, a claim of intrusion upon seclusion can be based on just one phone call.[89] And it is a fact issue whether 68 calls in 11 months after a request to cease were highly offensive. Incidentally, leaving a "message" is also a communication under the FDCPA.[90]

According to the treatise, **<u>Enforcing Judgments and Debts</u>**, "A plaintiff may be able to recover damages for . . . **invasion of privacy**. . ., and other causes of action merely by proving defendant's statutory violation."[91] "Violation of these standards could result in tort liability in addition to the remedies provided by the FDCPA."[92] Indeed, another court in California handling an FDCPA matter stated, "[i]n light of the common law and statutory proscriptions on abusive debt collection practices, a reasonable jury could find that Defendants' debt collection conduct was actionably 'offensive,' and could find Defendants liable for the tort of intrusion upon seclusion."[93]

Furthermore, California courts have also pointed to § 1692d(5)'s prohibitions against repeated telephone calls to hold that the debt collector could also be liable

---

[87] *Carr v. NCO Fin. Sys.*, No. 11-2050, 2011 U.S. Dist. LEXIS 145993, at *5-6 (E.D. Pa. Dec. 20, 2011).
[88] *Id. See Bassett v. I.C. Sys., Inc.,* 715 F. Supp. 2d 803, 810 (N.D. Ill. 2010).
[89] *Diaz v. DL Recovery Corp.*, 486 F. Supp. 2d 474 (E.D. Pa. 2007).
[90] *Foti v. NCO Financial Systems*, 424 F. Supp. 2d 643 (S.D.N.Y. 2006); *Hosseinzadeh v. M.R.S. Assoc., Inc*., 387 F. Supp. 2d 1104, 115-116 (W.D. Cal. 2005).
[91] Alan M. Ahart, The Rutter Group (2009), 21-138, [2:425] (emphasis added).
[92] *Id.* at 21-137, [2:423].
[93] *Fausto*, 598 F. Supp. 2d at 1056.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

for an intrusion upon seclusion.[94] In *Fausto,* the court denied defendant's motion for summary judgment where the debt collector made over 90 calls to the consumers. At the very least, it is a fact question for the jury whether such conduct is highly offensive and intrusive. Indeed, whether Defendants' conduct constitutes intrusion is for the jury.[95]

### d. Whether a debt collector is polite on the phone is not determinative

The actual content of the communication is irrelevant to determining whether Defendants' conduct was highly offensive and intrusive. For instance, in *Desmond*, the court rejected the debt collector's argument that it wasn't liable because the consumer admitted the debt collector was polite on the phone and did not make any threats.[96] In denying the debt collector's motion for summary judgment on intrusion, the court instead pointed to the 22 phone calls made by the debt collector in three months, despite the fact that there was only one (1) single phone conversation. Similarly, the Ninth Circuit has stated that a reasonable trier of fact could find that repeated telephone calls could violate §§ 1692d and 1692f(1).[97] In doing so, the Ninth Circuit reversed the trial court's finding that there can be no § 1692d violation for abuse absent some profane or obscene statements, or threat of physical harm or violence. Other courts have also said "actionable harassment or annoyance turns on the volume and pattern of calls made, irrespective of the

---

[94] *Id*.

[95] *Bauer*, 149 F. Supp. 2d at 1109 (reversing earlier ruling and holding it was for the jury to decide whether a debt collector's conduct constituted intrusion, even though it was disputed whether there were 10 or more repeated calls to a consumer and third parties over the course of a five-month period).

[96] *Desmond*, 724 F. Supp. 2d at 568-69.

[97] *Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162 (9th Cir. 2006).

16

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

substance of the messages."[98]  Herein, Defendants testified its policy allows 186 calls a month![99]

**2. Continuing To Call After A Consumer Says She Is Unable To Pay, *Or* Asks That The Calls Stop, *Or* Refuses To Speak To The Collector, Evidences An Intent To Harass**

Continuing to call a consumer after she says she is unable to pay,[100] or refuses to pay,[101] or asks that the calls stop,[102] is evidence of an intent to harass, and could be found by a reasonable juror as highly offensive.[103] Once a debt collector is told to stop calling, "each of the 101 subsequent phone calls to Plaintiff constituted a violation of 15 U.S.C. § 1692d."[104]  *Also,* the frequency of calls after a consumer indicates she is unable to pay a debt could demonstrate to a jury that a debt collector acted with intent to harass, even if the Plaintiff doesn't speak to the debt collector.[105]

This is exactly Defendants' practice.  On different dates, Plaintiff told different collectors to stop calling.  However, the calls continued. Furthermore, debt collector Penny Wise testified that even if the customer told her stop calling because she didn't have any money, Ms. Wise would ***not*** note the computer in a way that

---

[98] *Bassett,* 715 F. Supp. 2d at 806.
[99] **Exhibit 3**, DSNB depo., at 113:6-114:6.
[100] *Prewitt v. Wolpoff & Abramson, LLP*, No. 05-cv-725S(F), 2007 U.S. Dist. LEXIS 19148, at *9-10 (W.D.N.Y. Mar. 19, 2007).
[101] *See Brandt,* 2010 U.S. Dist. LEXIS 14588, at *5 (M.D. FL 2010) (*citing Kerwin v. Remittance Assistance Corp.*, 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008)).
[102] *Masuda,* 38 F. Supp. 3d at 1135; *Komarova*, 175 Cal. App. 4th at 345.
[103] *Joseph*, 238 F. Supp. 2d at 1169 ("Given the number and pattern of calls involved, there is genuine issue of fact as to whether Plaintiff's privacy was invaded."); *Masuda*, 38 F. Supp. 3d at 1135.
[104] *Brandt*, 2010 U.S. Dist. LEXIS 14588, at *6. *See also, Shand-Pistilli v. Prof'l Account Servs.*, No. 10-CV-1808, 2010 U.S. Dist. LEXIS 75056, at *11-12 (E.D. Pa. July 26, 2010).
[105] *Prewitt*, U.S. Dist. LEXIS 19148, at *9-10.

---

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

would prevent further collection calls to the consumer.[106] FDS testified consistent with Ms. Wise, that if a customer told FDS to stop calling, the calls would nevertheless continue.[107] Thus, Defendants' continued calls to Ms. Romero in spite of her requests that they cease show Defendants' intent to harass. According to Defendants, it only stopped calling after the December 2013 conversation with Romero because she allegedly told Defendants they had the wrong phone number.[108]

Jurors and courts understand the harm here. Indeed, the California Court of Appeals upheld a jury verdict of $195,000 in emotional distress damages for violations of the RFDCPA when the debt collector made phone calls "maybe every other day" at the rate of "maybe three times a week," and there were also calls to third-parties.[109] The calls to the consumer went unanswered, but there were 48 messages. The calls continued after callers were asked to stop.

### 3. Repeated Calls On The Same Day Violate RFDCPA and Intrude Upon Seclusion.[110]

Courts have held repeated calls the same day also constitute an intrusion upon seclusion.[111] Similarly, California federal courts have stated two or more calls per day "certainly may constitute harassment or annoyance."[112] Another court denied a motion to dismiss where the plaintiff alleged that the defendant called her 11 times

---

[106] **Exhibit 10**, Penny Wise depo., at 21:6-10.
[107] **Exhibit 5**, FDS depo., at 43:20-44:8; 45:13-20; 96:20-97:18.
[108] **Exhibit 5**, FDS depo., at 118:18-119:10.
[109] *Komarova*, 175 Cal. App. 4th at 333.
[110] *See* Cal. Civ. Code § 1788.11(d) and (e); Cal. Civ. Code § 1788.17, incorporating §§ 1692d and 169d(5).
[111] *See Kuhn,* 865 F. Supp. at 1448-49.
[112] *Langdon v. Credit Mgmt. LP*, No. C-09-3286, 2010 U.S. Dist. LEXIS 16138 (N.D. Cal. Feb. 24, 2010).

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

in 19 days, with two calls occurring on the same day.[113] As noted in the facts section above, evidence shows more than two calls on the same day on numerous occasions.

### 4. <u>Placing Telephone Calls Without Identifying Oneself is Harassing and Intrusive</u>

California courts have pointed to violations of the FDCPA, prohibiting repeated telephone calls, and failing to meaningfully identify oneself, as bases to rejected a debt collector's motion for summary judgment regarding intrusion upon seclusion.[114]  Indeed, Courts in California have stated telephoning a consumer and hanging up without identifying oneself is abusive and harassing.[115] Defendants' practice and policy was, at times, to hang up before leaving any message identifying itself.[116] Indeed, collectors testified they were trained to hang up and not to leave a message when reaching a customer's voice mail.[117]

Thus, in addition to Defendants' 295 calls in 6 months (including 62 calls in October, 80 calls in November, and up to 8 times a day on occasion), Defendants intruded upon Ms. Romero's seclusion by placing at least 44 calls where it reached an answering machine, but failed to identify itself.[118] Indeed, out of the 295 calls

---

[113] *Valentine v. Brock & Scott, PLLC*, No. 2:09-CV-2555, 2010 U.S. DIST. LEXIS 40532 (D. S.C. April 26, 2010).
[114] *Fausto,* 598 F. Supp. at 1056.
[115] *Langdon*, 2010 U.S. Dist. LEXIS 16138, at *4-8.
[116] **Exhibit 3**, DSNB depo., at 105:20-107:02
[117] *See, e.g.,* **Exhibit 9**, Roth depo., at 22:15-23:03; **Exhibit 10**, Penny Wise depo., at 42:19-22.
[118] Defendant (through FRCP 30(b)(6) corporate designee Thomas Curtis) testified that an October 31 call, stating "AMD DETECTED_END TERM" indicates and answering machine was reached and no message was left. **Exhibit 3**, DSNB depo, at 105:20-107:02.  There are 44 instances of "No Answer Term=NA" appearing on Defendants' collection logs from July 7 to December 3, 2013. **Exhibit 8**, at DSNB 42-58.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

placed to Ms. Romero, it left only 18 voice mail messages.[119]

**5. Making Collection Calls To A Cell Phone Via The Use Of An Auto-dialer, Or The Use Of Pre-Recorded Messages, Is An Intrusive Practice**

It is well settled that unwanted automated dialer calls and pre-recorded messages to cell phones, in violation of the TCPA, are ***intrusive***. Indeed, in *Gager v. Dell Financial Services, LLC*, the Third Circuit, relying on a 2012 Supreme Court ruling that discussed how automated dialer calls were an invasion of privacy, stated "Congress passed the TCPA to protect individual consumers from receiving **intrusive** and unwanted calls."[120] Defendants have not sought summary adjudication of the TCPA claims, thus granting summary judgment on intrusion could lead to inconsistent rulings if the jury finds a violation of the TCPA.

Furthermore, California law holds that a party need not show any pecuniary loss to recover actual damages for invasion of privacy.[121] "The injury is mental and subjective. It impairs the mental peace and comfort of the person and may cause suffering much more acute than that caused by a bodily injury."[122] Additionally, *Bundren v. Spiegel*, on which Defendant relies, is not helpful to Your Honor, since the court was not faced with evaluating an intrusion upon seclusion claim. Finally, Defendants' reliance on *McEndree,* is misplaced. There, the court stated:

> Plaintiff does little more than argue that whether or not Defendant's debt collection activities were sufficiently offensive is a determination that must be left to the trier of fact. The Court disagrees. In order to survive summary

---

[119] **Exhibit 3**, DSNB depo., at 135:22-136:06.

[120] 727 F.3d at 268 (citing the U.S. Supreme Court decision that discussed how automated dialer calls were an invasion of privacy, *Mims*, 132 S. Ct. at 745 (emphasis added)).

[121] *Panahiasal*, 2007 U.S. Dist. Lexis 17269.

[122] *Fairfield v. American Photocopy Equipment Co.*, 138 Cal. App. 2d 82, 86 (1955).

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

judgment, Plaintiff must identify a genuine issue of material fact, as well as some evidence upon which a jury could find in his favor.[123]

Herein, Plaintiff has identified numerous issues of material fact and evidence.

**B. The Ninth Circuit Recognizes Negligent Infliction Of Emotional Distress**

• The Ninth Circuit recognizes negligent infliction of emotional distress.[124]

• The Ninth Circuit has reversed trial courts that have dismissed claims of negligent infliction of emotional distress; as well as trial courts that have dismissed negligence claims in unlawful debt collection matters.[125]

• Numerous courts in California have recognized negligence claims for unlawful debt collection practices, including the Southern District of California (Hon. Dana Sabrawa and Hon. Janis Sammartino).[126]

• Other courts handling FDCPA matters have recognized negligence claims for unlawful debt collection practices.

Federal courts in California recognize negligence claims, and a duty, in unlawful debt collection matters.[127] Indeed, that debt collectors owe a duty to refrain from outrageous and abusive telephone calls has long been recognized under California law.[128] Other states have held similarly.[129] Simply put, "[a] duty of care

---

[123] *McEndree v. Rash Curtis & Assocs.*, 2012 U.S. Dist. LEXIS 65374 (E.D. Cal. May 9, 2012)(nor were there claims of intrusive TCPA calls in *McEndree*).
[124] *Austin v. Tehrune*, 367 F.3d 1167 (9th Cir. 2004).
[125] *Miller*, 885 F.2d at 511; *Fox*, 15 F.3d at 1517.
[126] *Fox*, 15 F.3d at 1517; *Weakley,* 723 F. Supp. 2d at 1346, *Thompson*, 2010 U.S. Dist. LEXIS 32620, at *12, 16 (giving plaintiff leave to amend negligence claim).; *Tourgeman,* 2011 U.S. Dist. LEXIS 81070, at *32.
[127] *Thompson*, 2010 U.S. Dist. LEXIS 32620, at *12; *see Tourgeman,* 2011 U.S. Dist. LEXIS 81070, at *32.
[128] *Bowden v. Spiegel*, 96 Cal. App. 2d 793 (1st Dist. 1950).
[129] *Owens v. Providian Financial Corp.*, 227 F.R.D. 181(E.D.N.Y. 2005) ("There is nothing contrary to public policy that precludes the Court from holding [bank] credit card issuers to a duty of care in the collection of their debts.").

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

may arise through statute, contract, the general character of the activity, or the relationship between the parties."[130]  Moreover, in determining what standard of care exists, California recognizes that a violation of a statute establishes the requisite standard of care in a negligence action. Defendants violated three (3) separate statutes: 1) the California FDCPA (Cal. Civ. Code §1788 et seq.), 2) the Cal. Penal Code § 653m, and 3) the TCPA (47 U.S.C. §227(b)(1)(A)).  Indeed, Defendants' repeated and continuous telephone calls are so offensive the legislature criminalized the act in Cal. Penal Code § 653m.  Furthermore, the Ninth Circuit has reversed courts that have dismissed claims of negligence in unlawful debt collection cases.[131]

## C.  Defendants Have Not "Cured" Their Violations Of The RFDCPA

• In drafting Cal. Civ. Code § 1788.30(d), the California legislature clearly anticipated that some violations of the Rosenthal Act are not able to be cured, because it used the phase "which is able to be cured." Cal. Civ. Code § 1788.30(d).

• The Southern District of California does not permit the "cure" defense when a debt collector cannot explain how it could have "cured" the alleged violation."[132]

Defendants' RFDCPA violations cannot be cured and have not been cured to date.  Defendants cites no authority for their proposition that repeated harassment after Plaintiff's requests that they cease, or engaging in calls with a frequency that is unreasonable under the circumstances, and hanging up without meaningfully identifying oneself, are violations that can be cured.  The California legislature expressly provided only that "if within 15 days either after discovering a violation which is able to be cured[.]"

---

[130] *Shin v. Kong*, 80 Cal. App. 4th 498, 504 (2000).

[131] *Fox*, 15 F.3d at 1517.

[132] "Defendant also does not explain how it could have 'cured' the alleged violation." *Adams v. CIR Law Offices, LP*, No. 07-CV-1041, 2007 U.S. Dist. LEXIS 63808 (S.D. Cal. Aug. 29, 2007).

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Furthermore, California Civil Code § 1788.30(d) specifically requires a debt collector to notify "the debtor of the violation." In Defendants' so-called "Curative Letter," there was no such notification and therefore, Defendants cannot use it to escape liability. At best, Defendants' letter spoke of an "alleged" violation. A debt collector cannot cure by claiming it is an "alleged violation." Other courts evaluating similar state cure statutes have also stated there must be an acknowledgement of the existence of a violation, and that a contentious or argumentative letter does not suffice.[133] *See* letter at Docket #43-3.

Indeed, Defendants further fail to admit any violation in: 1) their Answer, 2) their written discovery responses, and 3) their deposition testimony.[134] Moreover, in verified written discovery responses as recent as November 23, 2015, Defendants state, "**Defendants deny any violation of the RFDCPA was committed.**"[135] Furthermore, when asked in an Interrogatory to "Identify what is/are the alleged violation(s) of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA") acknowledged in Your February 18, 2015 § 1788.30(d) letter to Plaintiff," Defendants merely responded, "**Defendant did not acknowledge any actual violations. Defendant acknowledged that Plaintiff alleged a purported violation of the RFDCPA in her complaint**."[136] Thus, Defendants have failed to acknowledge a violation and have failed to meet the statutory requirements to cure.

Here, Defendants continue to refuse to acknowledge the existence of a violation. Furthermore, Defendants stopped placing calls to Plaintiff right after Plaintiff's third verbal request to cease, on December 3, 2013, and their ceasing had

---

[133] *In re Kemper*, 263 B.R. 773 (S.D. TX 2001).
[134] **Exhibit 3**, DSNB depo., at 135:22-136:13.
[135] **Exhibit 17**, FDS Bank's Response to Plaintiff's Interrogatories (Set Three), at 1:7-12 (emphasis added); **Exhibit 18**, Department Store National Bank's Response to Plaintiff's Interrogatories (Set Three), at 1:7-12 (emphasis added).
[136] *Id.*

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

nothing to do with making any adjustments or corrections to cure any violation in February 2014. According to Defendants, they only stopped calling after the December 3, 2013 conversation with Romero because she allegedly told Defendants they had the wrong phone number.[137] Nor did Defendants even mention failing to meaningfully identify itself, or placing repeated calls on the same day. Simply put, Defendants do not take responsibility as the legislature clearly intended.

Furthermore, "The RFDCPA, modeled on the FDCPA, is designed to protect consumers from unfair and abusive debt collection practices.[138] And the Ninth Circuit has held "the FDCPA should be construed liberally in favor of the consumer." Additionally, Defendants are not without a remedy. Civil Code § 1788.30(d) allows debt collectors to attempt to cure violations that can be cured; while Civil Code § 1788.30(e) allows debt collectors to attempt to prove a bona fide error defense, and thus escape the statute's strict liability. However, Defendants have not sought to adjudicate any potential bona fide error defense herein.

Perhaps, a debt collector that sends a letter mistakenly demanding $10,000, instead of $100, could cure this violation by sending a curative letter identifying the violation and stating it is only $100 that is owed. Assuming the consumer did not send the debt collector $10,000, then the only violation would be a statutory one with damages of potentially $1,000. However, when a debt collector makes 295 telephone calls, over 6 months, after being asked to stop, that results in actual damages of emotional distress and that violation cannot be cured. Thus, Courts evaluating similar consumer protection statute cure provisions (such as the Truth in Lending Act ("TILA")) have stated they only apply to clerical violations, such as

---

[137] **Exhibit 5**, FDS depo., at 118:18-119:10.
[138] *Flores v. Collection Consultants of Cal*., No. SA-CV-14-0771-DOC, 2015 U.S. Dist. LEXIS 92732, at *8-9 (C.D. Cal. Mar 20, 2015).

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

mathematical errors.[139] The Ninth Circuit has pointed to TILA, which was used to draft the remedies sections of the FDCPA, and has stated clerical errors were the only violations the section was designed to exclude.[140] While it did so in speaking of the bona fide error provision, and not the cure provision, other courts have held TILA's cure provisions only apply to clerical errors.[141]  Indeed, the RFDCPA's cure provisions is so limited in its application, Defendants do not even cite one decision that has allowed a debt collector to escape liability claiming a cure under the provision.  Thus, Defendants ask Your Honor to go where no court has gone before.

As such, Defendants Motion for Summary Judgment on Plaintiff's RFDCPA claim must be denied.

## V.    CONCLUSION

Defendants' Motion should be denied.

Respectfully,


Date: January 15, 2016


/s/ Andre Verdun
Andre Verdun, Attorney for Plaintiff


/s/ Ronald Wilcox
Ronald Wilcox, Attorney for Plaintiff

---

[139] *See Thomka v. AZ Chevrolet, Inc.*, 619 F.2d 246 (3d Cir. 1980).
[140] *Baker v. G.C. Servs. Corp.*, 677 F.2d 775 (9th Cir. 1982).
[141] *Thomka*, 619 F.2d at 251.

25

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT